Samuel J. Capizzi, Plaintiff, - against-

against
Brown Chiari LLP, JAMES E. BROWN, and DONALD B. CHIARI, Defendants.


 2016-810115

APPEARANCES:
WEBSTER SZANYI LLP
Kevin Szanyi, Esq., Of Counsel
Steven R. Hamlin, Esq., Of Counsel
Attorneys for Plaintiff
RUPP BAASE PFALZGRAF CUNNINGHAM LLC
R. Anthony Rupp, III, Esq., Of Counsel
Attorneys for Defendants


Timothy J. Walker, J.

On September 13, 2016, Plaintiff, Samuel J. Capizzi ("Capizzi"), commenced this action seeking, inter alia, an order declaring that Defendant, Brown Chiari LLP, "was dissolved effective January 8, 2016 and that Defendants are required to wind up the affairs of [Brown Chiari LLP] and to provide a full and complete accounting of [Brown Chiari LLP's] assets, liabilities, income and expenses to [Capizzi]" (Amended Complaint, Wherefore Clause [a]).
During the period May 29, 2018 through June 5, 2019, the Court conducted a non-jury trial over the course of twenty (20) days, limited to the sole question of whether Capizzi was an equity partner in Brown Chiari LLP at the time he resigned on January 8, 2016 [FN1]
. During that [*2]time, the Court heard testimony from nine (9) witnesses (each of whom was thoroughly examined and cross-examined by the parties' respective attorneys, and three [3] of whom were the parties themselves, whose testimony consumed the majority of the trial time - eleven [11] days), and the Court entered one hundred sixty (160) exhibits into evidence. The trial transcript is 3367 pages. At the conclusion of the trial of this phase of the action, the Court requested proposed Findings of Fact and Conclusions of Law, which the parties duly submitted. The record closed on August 1, 2019. 
FINDINGS OF FACT
The law firm, known as Brown, Chiari, Capizzi & Frascogna, LLP, was established on December 16, 1997. On March 19, 2002, Brown, Chiari, Capizzi & Frascogna, LLP, certified as doing business as "Brown Chiari."
On April 21, 2004, Frank Frascogna resigned from Brown, Chiari, Capizzi & Frascogna, LLP. In August 2004, Frascogna commenced an action against Brown, Chiari, Capizzi & Frascogna LLP, and those individuals whom he characterized as the law firm's individual partners namely, Capizzi, and the individual defendants in this action, James E. Brown ("Brown") and Donald B. Chiari ("Chiari") (the "Frascogna Action").
Frascogna contended that, inter alia, he was a general partner in Brown, Chiari, Capizzi & Frascogna, LLP; the partnership underwent a dissolution upon his withdrawal from it on April 21, 2004; and that he was entitled to both a dissolution of Brown, Chiari, Capizzi & Frascogna, LLP, pursuant to sections 62 and 63 of the Partnership Law, and an accounting.
[Then] Supreme Court Justice, Eugene M. Fahey, conducted a nonjury trial over the course of six (6) days, during June and July 2006 relative to the following question: "Was Plaintiff Frascogna a general partner in the law firm Brown, Chiari, Capizzi and [FN2]
Frascogna, LLP? (Court Ex. 1 [Fahey Decision, dated December 22, 2006], p. 2). As in the instant matter, the Fahey Decision did not consider any questions related to dissolution or the potential valuation and division of partnership assets, all of which, if necessary, would await further determination.
During the trial of the Frascogna Action, Capizzi testified regarding his status at Brown, Chiari, Capizzi & Frascogna, LLP, prior to, and through Frascogna's resignation in April 2004. Capizzi testified that he was not a full equity partner; that he was merely an income partner, which is inconsistent with the position he takes in the instant matter before this Court. 
Justice Fahey disagreed with Capizzi's testimony and, in determining that Frascogna was a general partner, made the following findings of fact, which he applied equally to Capizzi:
The Court finds the following documents support the existence of a partnership with four partners [FN3]
:
1. All the partnership tax returns during the period in question, identifying the four as partners.
2. The Marine Midland Bank Certified Copy of Corporate banking Resolutions, where [*3]the four partners signed off on broad authority for each of the partners to conduct transactions with the bank shortly after the partnership was formed.
3. The $500,000.00 line of credit opened with M & T Bank in 2003 for which all four partners obligated themselves.
4. The draft of the four partners, the so-called "death agreement", that in the case of one partner's death, the other partners would pay a full percentage of his share for that year, followed by two third[s] (2/3) of his share for year two; then one-half (½) for years three, four and five; then one-quarter (1/4) for years six, seven and eight.
5. The Business Certificate for Partners, certified by all four men that they agreed to conduct business under the d/b/a "Brown Chiari". (Court Ex. 1, p. 35) (emphasis added).
In determining that Frascogna was a general partner of Brown, Chiari, Capizzi & Frascogna, LLP, Justice Fahey also found that, while the partnership did not operate under a formal written partnership agreement, Brown directed Capizzi to file a registered limited liability partnership on December 11, 1997, which listed Frascogna - and Capizzi - "as liable in their capacity as partners for all debts, obligations or liabilities of the partnership" (Id., at p. 34).
Upon rendering the Fahey Decision, the Frascogna Action was re-assigned to [then] Supreme Court Justice, John Curran. On January 22, 2007, Justice Curran issued an order declaring Frascogna to be an equity partner of Brown, Chiari, Capizzi & Frascogna, LLP; dissolving the partnership; declaring Frascogna's entitlement to an accounting; and striking any denial of Frascogna's status as a general partner of Brown Chiari from the Answers in the Frascogna Action (the "Curran Order") (Court Ex. 5).
The Frascogna Action was settled later in 2007, and on May 24, 2007, a Certificate of Registration for "Brown Chiari LLP," a new partnership, was filed with the New York Secretary of State's Office, consistent with the Fahey Decision, the dissolution of Brown, Chiari, Capizzi & Frascogna LLP, and as directed in the Curran Order.
Following the settlement of the Frascogna Action, Brown, Chiari, and Capizzi largely continued to operate as they had while members of the dissolved firm. Indeed, in the wake of the Fahey Decision (finding Frascogna - and Capizzi - to be equity partners of the dissolved firm), neither Brown, nor Chiari, proposed a formal, written partnership agreement to clarify and define the attorneys' status in the new law firm, nor was any other effort made to better define Capizzi's role, much less his legal status. 
The following findings of fact support a determination that Capizzi was an equity partner in Brown Chiari LLP, at the time of his resignation on January 8, 2016:
• Brown, Chiari, and Capizzi settled the Frascogna Action for $400,000, with Capizzi paying twenty percent (20%) thereof (in the form of a reduction in his net distributable income that year). This is consistent with the responsibilities of an equity partner, not an income partner.
• Capizzi's interest in the dissolved Brown, Chiari, Capizzi & Frascogna, LLP firm became a capital contribution in the new partnership, Brown Chiari LLP.
• Brown Chiari LLP's tax returns for 2007 through 2015 identify Capizzi as one of three (3) partners in the law firm, and Capizzi received a schedule K-1 for each such year identifying a capital account each year.
• Brown, Chiari, and Capizzi signed banking authorizations in favor of M & T Bank on [*4]August 27, 2012 and September 27, 2013, both entitled "Partners' Authority Resolution," holding Capizzi out as a "Partner" at Brown Chiari LLP, who was authorized to, inter alia, borrow money, mortgage property, execute promissory notes, and sign security agreements on behalf of Brown Chiari. The Partner Authority Resolutions also stated that M & T Bank "may rely conclusively on the signatures [of] any of the Partners . . ." (Exs. 19 and 21).
• Capizzi personally guaranteed Brown Chiari LLP's line of credit with M & T Bank (the "Personal Guaranty") (Ex. 25). Moreover, Capizzi was personally liable for Brown Chiarai LLP's debts, if any, beyond the line of crdit.
• Brown Chiari LLP procured life insurance solely for Brown, Chiari, and Capizzi, for which the firm paid the premiums, which were not considered draws (the "Life Insurance"). Other attorneys working for Brown Chiari LLP, despite being held out as "partners" to the public, were not provided with the firm-sponsored/paid for Life Insurance.
• The 2007-2015 tax returns, Partners' Authority Resolutions, the Personal Guaranty, and the Life Insurance [FN4]
are the types of documents Justice Fahey relied on in the Franscogna Action to determine, inter alia, that Franscogna was an equity partner.
• In their Answer to Capizzi's Amended Complaint, Defendants asserted a counterclaim against Capizzi to recover legal fees that Capizzi may recover at his new law firm in order to reduce Brown Chiari LLP's line of credit. Both Brown and Chiari conceded during the trial of this matter that such action was inconsistent with their contention that Capizzi's status at Brown Chiari LLP was limited to that of an "income" partner.
• Freed Maxick, Brown Chiari LLP's principal certified public accountants, understood Capizzi to be an owner of the law firm. Freed Maxick's work-papers refer to Capizzi as an "owner" of Brown Chiari LLP (Ex. 56), and Sandra York, the CPA primarily responsible for the day-to-day handling of Brown Chiari LLP's accounting, signed a letter, dated November 6, 2014 (directed to M & T Bank's mortgage department), "advis[ing] that Samuel J. Capizzi is the owner of 20% of the law-firm partnership of Brown Chiari, LLP" (sic)[FN5]
(Ex. 85).
• Brown, Chiari, Capizzi & Frascogna, LLP, had a Profit Sharing Plan that made no distinction between owners and employees of the law firm, treating all of them equally. Following the dissolution of Brown, Chiari, Capizzi & Frascogna LLP, the reconstituted law firm (i.e., Brown Chiari LLP) modified the Profit Sharing Plan and added a new Cash Balance Plan. Both the Cash Balance Plan (implemented in 2012) and the revised Profit [*5]Sharing Plan (implemented in 2015) distinguished between owners and employees, treating only Brown, Chiari, and Capizzi, as owners.
• The principal purpose of modifying the Profit Sharing Plan and creating a new Cash Balance Plan was to create separate tiers between the law firm's owners and employees; treating the owners more favorably. • Brown Chiari LLP retained Harbridge Consulting Group ("Harbridge") to modify the Profit Sharing Plan and to add a Cash Balance Plan. On October 30, 2012, representatives of Harbridge, including Vincent Spina, a pension consultant, made a presentation to Brown, Chiari, and Capizzi regarding Harbridge's recommendations [FN6]
. The presentation included a PowerPoint presentation, which identified (at p. 4) Brown, Chiari, and Capizzi as the firm's only "partners." At page 7, the PowerPoint presentation further referred to such partners as the firm's "employer." 
• Neither Brown, nor Chiari, ever questioned Harbridge's characterization of Capizzi as an "employer," nor requested that the PowerPoint presentation be corrected to reflect that he was not an employer. • Capizzi testified at trial that during the October 30, 2012 meeting with Harbridge, Brown identified himself, Chiari, and Capizzi as Brown Chiari LLP's "owners" (TT, pp. 715-16). At trial, Brown did not dispute this testimony.
• Two (2) Summary Plan Descriptions ("SPD") were created for the Profit Sharing Plan, as modified; one "for Owners" and another "for Employees" (Exs. 52 and 53, respectively). Only Brown, Chiari, and Capizzi were identified by name and included in the SPD for Owners (Ex. 52).
• Harbridge's internal emails and work-papers referred to Capizzi as an "owner" of Brown Chiari LLP (see, e.g., Exs. 64 and 64A).
• Harbridge was required to prepare and file IRS [FN7]
Form 5500 in connection with its consulting work for Brown Chiari LLP. In completing the form on behalf of the law firm, Kim Kasperek, the firm's former bookkeeper, identified Capizzi (along with Brown and Chiari) as an owner of Brown Chiari LLP. Kasperek testified at trial that either Brown or Chiari would have approved the completed form before she submitted it to Harbridge (TT, pp. 539-40; see also, Ex. 57).
• Mark E. Brand, Esq., owner of ACSI [FN8]
, testified on behalf of Capizzi as an expert witness in the fields of pension administration and actuarial consultation. Mr. Brand testified on November 7, 2018 and January 2, 2018, during which time he was thoroughly examined and cross-examined. He concluded, to a reasonable degree of certainty as an [*6]ERISA [FN9]
attorney and in accordance with his areas of expertise, that the documentation related to Brown Chiari LLP's Profit Sharing Plan, as modified and implemented in 2015, and Cash Balance Plan, as created and implemented in 2012, was consistent with Capizzi's claim that at the time he resigned from the law firm, he was an owner and full equity partner (Id., at pp. 1421-22). Such documents, which filled a standard banker's box, consisted of, inter alia, the plan documents; the SPDs; letters and emails by and between representatives of Brown Chiari LLP and representatives of Harbridge; the October 30, 2012 PowerPoint presentation; forms completed by Brown Chiari LLP and submitted to Harbridge; and the deposition testimony of Spina and Kasperek (Id.). The Court credits Mr. Brand's trial testimony. 
• In the FAFSA [FN10]
application Capizzi submitted in connection with one of his son's college applications, he identified himself, under oath, as a 20% owner of Brown Chiari LLP (Ex. 180, Tab 1B). Capizzi completed the FAFSA application before he resigned from Brown Chiari LLP. 
• There are no Brown Chiari LLP documents that identify Capizzi as an "income" partner.
The following findings of fact support a determination that Capizzi was not an equity partner of Brown Chiari LLP, at the time of his resignation on January 8, 2016:
• Following the filing of the Certificate of Registration for Brown Chiari LLP, the New York State Department of Taxation and Finance sent the law firm a "LLC/LLP Request for Information," seeking information regarding the owners of the law firm (Ex. 141). Chiari responded by identifying himself and Brown. His response did not identify Capizzi as an owner of Brown Chiari LLP.
• Capizzi was not involved in the annual year-end meetings held between Brown and Chiari, during which they discussed and set attorney compensation (not their own, or Capizzi's), and staff compensation. Nor did Capizzi receive information regarding compensation decisions before they were communicated to the other attorneys and staff.
• Capizzi did not review Brown Chiari LLP's tax or financial records.
• Capizzi received case assignments from Brown and Chiari.
• Capizzi did not have authority to settle higher value cases without Brown or Chiari's approval.
CONCLUSIONS OF LAW
The Binding Effect of the Fahey Decision and the Curran Order
The settlement of the Frascogna Action had no effect on the Fahey Decision or the Curran Order, because neither were vacated as part of the settlement (Allstate Ins. Co. v. Am. Home Assur. Co., 43 AD3d 113[1st Dept 2007]). 
Defendants filed a notice of appeal of the Fahey Decision, but never perfected it. As such, the appeal was never decided.
In light of the foregoing, Defendants are collaterally estopped from challenging issues conclusively determined against them in the Franscogna Action (Rozewski v. Trautmann, 151 [*7]AD3d 1945, 1945 [4th Dept. 2017] ["Under the doctrine of collateral estoppel, or issue preclusion, a party may not relitigate in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same"] [internal citations and quotations omitted]). 
Collateral estoppel applies where "(1) the issue sought to be precluded is identical to a material issue necessarily decided by the prior tribunal in a prior proceeding; and (2) there was a full and fair opportunity to contest the issue in that tribunal" (Id., at 1945-46). Moreover, "collateral estoppel does not require a judgment which ends the litigation and leaves nothing for the court to do but execute the judgment, but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated" (Zdanok v. Glidden Co., Durkee Famous Foods Div., 327 F2d 944, 955 [2d Cir 1964]) [internal quotation and citation omitted]).
Defendants are collaterally estopped from denying the following "material issues" decided in the prior Frascogna Action (Rozewski, 151 AD3d at 1945-46):
• Justice Fahey determined (on facts similar here) that Brown, Chiari, Capizzi & Frascogna LLP, was a partnership with four equity partners, one of whom included Capizzi;
• Justice Curran ordered that "any denial of Frascogna's status as an equity partner with Messrs. Brown, Chiari and Capizzi is hereby stricken" (Court Ex. 5, p. 2) (emphasis added); and
• Brown, Chiari, Capizzi & Frascogna, LLP, dissolved, and Frascogna was entitled to an accounting, pursuant to New York Partnership Law.
For these reasons, Capizzzi's testimony in the Franscogna Action (with which Justice Fahey disagreed) is irrelevant. It is the Fahey Decision that is controlling, not the testimony upon which it is based (and, importantly, with which Judge Fahey largely disagreed). Capizzi's prior testimony is also irrelevant, because it pertained to a different law firm - Brown, Chiari, Capizzi & Frascogna, LLP, which was dissolved in 2007.
Notwithstanding the Fahey Decision and the Curran Order, and based on the record before this Court, the determination is the same.
Partnership Law
Partners enjoy the freedom to agree on the rules governing their relationship. For this reason, "the Partnership Law's provisions are, for the most part, default requirements that come into play in the absence of an agreement" (Congel v. Malfitano, 31 NY3d 272, 287 [2018]). By "agreement," the Court of Appeals was referring to a written agreement, and the Court went on to hold that the terms of a written agreement control where the writing addresses a particular issue but, in the absence of a written agreement, reference should be made to principles of contract law (Id.).
It is undisputed that there is no governing partnership agreement in this matter. Despite the outcome of the Frascogna Action, no partnership agreement was ever prepared to govern the parties' rights and obligations in the new law firm - Brown Chiari LLP, formed after the dissolution of Brown, Chiari, Capizzi and Frascogna, LLP. Accordingly, and by necessity, the Court turns to the provisions of the New York Partnership Law.
New York Partnership law §10(1) defines a partnership as,
an association of two or more persons to carry on as co-owners a business for profit and [*8]includes for all purposes of the laws of this state, a registered limited liability partnership.
Section 11(4) of the Partnership Law provides that,
The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business . . . .
It is undisputed that Capizzi shared in the profits of Brown Chiari LLP, from the day the law firm was established in 2007. At all times, the parties had a "deal/agreement" to distribute profits 40% (Brown)/ 40% (Chiari)/ 20% (Capizzi). Accordingly, the burden of proof shifted to Defendants to demonstrate, based on the parties' relationship as a whole, that Capizzi was not an equity partner (Partnership Law §11[4]; see also, Kirsch v. Leventhal, 181 AD2d 222 [3d Dept. 1992]).
A partnership may exist notwithstanding a partners' statements or beliefs to the contrary (Bianchi v. Midtown Reporting Serv., Inc., 103 AD3d 1261, 1261 [4th Dept. 2013] [in the absence of a written partnership agreement between the parties, the court must determine whether a partnership existed "from the conduct, intention, and relationship between the parties"] see also, Goldberg v. Goldberg, 276 AD 1084 [2d Dept. 1950] ["parties may create a partnership evidenced by their statements, oral or written, or by their conduct"]).
In determining whether a partnership exists, no one factor is determinative, and the court shall examine the parties' relationship as a whole (Fasolo v. Scarafile, 120 AD3d 929, 930 [4th Dept. 2014]; see also, Fahey Decision, at 38-39). 
The Doctrine of Tax Estoppel
"A party to litigation may not take a position contrary to a position taken in an income tax return" (Mahoney-Buntzman v. Buntzman, 12 NY3d 415, 422 [2009]; see also, Amalfi v. 428 Co., 153 AD3d 1610 [4th Dept. 2017] ["whether using the application of judicial estoppel, quasi estoppel, or estoppel against inconsistent positions, courts have consistently held that a party is estopped from adopting in court a position contrary to that previously asserted on his or her tax returns"]).
Brown and Chiari testified that they personally reviewed and signed each of Brown Chiari LLP's tax returns/e-filing certifications. In doing so, under penalty of perjury, they each swore the following facts to be true, thus estopping them from now claiming otherwise:
• Capizzi was identified as one of three partners in the firm, and he received a K-1 with a capital account each year;
• Brown Chiari LLP's tax returns do not distinguish Capizzi's interests from Brown's and Chiari's, except in 2008 when Capizzi's ownership interest is represented to be 20.19% (it was 20% all other years);
• No one owned at least fifty percent (50%) or more of the profit, loss or capital of the partnership; thus establishing the partnership must have at least three owners; and
• Capizzi's K-1s reflect recourse liability, certifying that he was personally responsible for Brown Chiari LLP's debts.
The Court acknowledges that facts exist which do not favor a finding that Capizzi was an equity partner at the time he resigned from Brown Chiari LLP. However, having presided over twenty (20) days of trial testimony and upon careful review and consideration of the parties' respective post-trial submissions, and due deliberation having been had thereon, the Court finds that, based on the totality of the governing factors (see e.g., the bank, pension, and tax [*9]documents, the manner in which Capizzi was held out to the public, and other factors, supra), Capizzi was an equity partner as of the date of his resignation from Brown Chiari LLP.
Accordingly, it is hereby
ORDERED AND DECLARED that, as of the date of his resignation from Brown Chiari LLP on January 8, 2016, Plaintiff, Samuel J. Capizzi, was an equity partner in the Brown Chiari LLP law firm.
This constitutes the Decision and Order of this Court. Submission of an order by the parties is not necessary. The delivery of a copy of this Decision and Order by this Court shall not
constitute notice of entry.
Dated: September 13, 2019
Buffalo, New York
_________________________________
HON. TIMOTHY J. WALKER, J.C.C.
Acting Supreme Court Justice



Footnotes

Footnote 1:The trial dates: May 29, 30, and 31, 2018; July 30 and 31, 2018; August 1, 2018; November 5 and 7, 2018; January 2, 3, and 4, 2019; April 3 and 17, 2019; May 13, 14, 15, 16, 17, and 29, 2019; and June 5, 2019. 

Footnote 2:The Fahey Decision refers to the law firm as both Brown, Chiari, Capizzi & Frascogna, LLP and Brown, Chiari, Capizzi and Frascogna, LLP.

Footnote 3:There can be no doubt that the four partners included Capizzi, and consisted of Brown, Chiari, Frascogna, and Capizzi.

Footnote 4:The Franscogna Action did not involve life insurance. However, in lieu thereof, the partners at Brown, Chiari, Capizzi & Frascogna LLP (i.e., Brown, Chiari, Franscogna, and Capizzi) had drafted what came to be known as a "death agreement," which provided for the payment of certain payments to each partner's estate following their death (Court Ex. 1, p. 35). The "death agreement" on which Justice Fahey relied is analogous to the Life Insurance, on which this Court relies. 

Footnote 5:Ms. York should not have included a comma in the law firm's name.

Footnote 6:Capizzi testified at trial that he attended the October 30, 2012 meeting (Trial Transcript ["TT"], p. 713). Chiari testified at trial that recalled attending the meeting but could not recall whether Capizzi attended it (Id., at p. 214). Spina testified that Capizzi may have attended the meeting (Id., at p. 1774).

Footnote 7:Internal Revenue Service.

Footnote 8:Actuarial Consulting Services, Inc.

Footnote 9:Employee Retirement Income Security Act of 1974 (codified at 29 USC Chapter 18).

Footnote 10:Free Application for Federal Student Aid.